THE STATE OF OHIO, APPELLANT, *v.* DECKER, APPELLEE.

[Cite as State *v.* Decker (1986), 28 Ohio St. 3d 137.]

(No. 86-379—Decided December 26, 1986.)

138

*John E. Shoop,* prosecuting attorney, and *Karen Lutz Kowall,* for appellant.

*Walter C. Boyuk* and *John W. Bosco,* for appellee.

*Randall M. Dana,* public defender, and *Robert L. Lane,* urging affirmance for *amicus curiae,* Ohio Public Defender Commission.

*Per Curiam.* The question presented is whether the trial court abused its discretion in excluding the opinion testimony of two of appellee's expert witnesses at the hearing on his petition for post-conviction relief. Initially, we are mindful that a reviewing court "will not reverse a ruling of a trial court on the qualification or competency of an expert witness to give his opinion upon a particular subject unless there is a clear showing that the trial court abused its discretion." *State* v. *Jones* (1981), 67 Ohio St. 2d 244, 251 [21 O.O.3d 152]; *State* v. *Hipkins* (1982), 69 Ohio St. 2d 80, 82 [23 O.O.3d 123].

Appellee's claim for relief was based on the alleged ineffective assistance of counsel at his trial. Appellee sought to demonstrate, through the testimony of the criminal defense attorney and the psychologist, that the insanity defense was a viable one, due to his history as a chronic alcoholic who suffered severe blackouts, and should have been pursued by trial counsel. We believe, however, that the trial court properly recognized that the testimony of appellee's experts was inappropriate under the facts and circumstances of this case.

Although appellee now contends that the insanity defense should have been raised at trial, this contention is at odds with the position he maintained up to and including his trial on these charges. At the hearing of November 13, 1979, appellee withdrew his plea of not guilty by reason of insanity. The dialogue between appellee and the trial judge at that hearing made clear that his withdrawal of the plea was knowing and voluntary.[1]

---

[1] At the November 13, 1979 hearing, the court carefully questioned appellee about his desire to withdraw his plea of not guilty by reason of insanity:

Thereafter, appellee consistently maintained that he could not have committed these offenses. For this reason, he subsequently asked to withdraw the guilty plea he had entered as part of a plea bargain with the state and moved to reinstate only his not guilty plea. In his letter to the trial judge, dated December 3, 1979, appellee wrote:

"* * * I withdraw my plea of Guilty to lesser charges * * *. I want the original charges reinstated against me * * *.

"It is very unfair for me to say I am guilty of a crime that I did not commit. It is unfair to my family and my friends and for these reasons they [the prosecutors] will have to prove that I am guilty of something I never did."

There was no mention in this letter, or at any time afterward, of any intention to reinstate the not guilty by reason of insanity plea.

Further, appellee testified at trial that he remembered events on the dates of the offenses. When asked if he had previously told a police officer that he did not commit the offenses, and if he did, he was too drunk to remember committing them, appellee called the officer a "damn liar." He steadfastly denied involvement in the crimes and produced alibi witnesses in his defense.

As these instances demonstrate, throughout the preparation of his defense and at trial, appellee aggressively took the position that he did not commit these offenses. Had the not guilty by reason of insanity defense also been pursued at trial, appellee would have been forced to admit his involvement in the crimes,[2] an admission he obviously opposed. Because of appellee's own unwavering stance, his post-conviction claim of ineffective assistance of counsel rings hollow.[3]

This court has previously stated that the evaluation of a claim of ineffective assistance of counsel is a two-step process. "* * * First, there must

---

"The Court: Now, I have a document in my hand, which was prepared this morning and which is signed by you, Mr. Decker, and by your attorneys, Mr. Purola and Mr. LaPlante, and it reads: 'This date, to wit: November 13, 1979, the Defendant hereby withdraws his formerly entered plea of not guilty by reason of insanity and proceeds on his plea of not guilty to the charges.'

"Is it your — do you understand that you have a right to enter a plea of not guilty by reason of insanity?

"The Defendant: Yes, sir.

"The Court: Do you wish to withdraw that at this time?

"The Defendant: Yes, sir."

[2] The defense of insanity is an affirmative defense based on an excuse " ' "which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true." ' " *State* v. *Humphries* (1977), 51 Ohio St. 2d 95, 99 [5 O.O.3d 89], quoting *State* v. *Poole* (1973), 33 Ohio St. 2d 18, 19 [62 O.O.2d 340]. See, also, *State* v. *Staten* (1969), 18 Ohio St. 2d 13 [47 O.O.2d 82].

[3] We also note that in his direct appeal from his conviction to the court of appeals, appellee failed to raise his concerns about trial counsel's failure to pursue the insanity defense.

be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397 [2 O.O.3d 495].

In *Strickland* v. *Washington* (1984), 466 U.S. 668, the United States Supreme Court articulated the duties of trial counsel. The court stated that "* * * counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. * * *" *Id.* at 691. Accord *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 89. The court also observed that "* * * strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable * * *." *Strickland, supra,* at 690. And, importantly, the *Strickland* court recognized the "distorting effects of hindsight" and warned against second-guessing as to counsel's assistance after a conviction. *Id.* at 689. For these reasons, the court concluded, "* * * [a] convicted defendant * * * must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and "* * * a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. * * *" *Id.* at 690.

When these *Strickland* principles are applied to the facts of the case *sub judice,* we cannot say that the trial court abused its discretion in excluding the testimony of two of appellee's expert witnesses at the post-conviction relief hearing. Appellee's defense attorney, Albert Purola, testified at the hearing that he discussed the possibility of proceeding with the insanity defense with appellee "at great length." Several factors were relevant to the decision not to pursue the defense, Purola stated. First, there was appellee's vehement denial of involvement. Second, appellee had offered alibi witnesses for several of the offenses. Purola also realized that it could confuse the jury and be risky to the success of appellee's defense to proceed at trial on both the not guilty and not guilty by reason of insanity defenses. In addition to the difficulties inherent in proving the insanity defense by a preponderance of the evidence, Purola faced the further complication of mounting this defense in a case involving separate crimes committed over a period of several months. Based upon his reasonable investigation of the facts and circumstances of the offenses, Purola testified that he exercised reasonable professional judgment, consistent with appellee's own position, in deciding not to proceed with the insanity defense at appellee's trial.

Based on Purola's testimony and appellee's own actions, we believe it is beyond dispute that appellee enjoyed the effective assistance of counsel. It is clear to us that the determination not to use the insanity defense was an informed, strategic choice made by defense counsel after a thorough

investigation of the relevant law and facts, dictated in large part by appellee's insistent denial of participation in these crimes. The testimony of appellee's experts to the contrary was, in the case *sub judice,* the sort of distorted hindsight and second-guessing that the *Strickland* court deemed inappropriate. While we do not intend to foreclose such expert testimony in future post-conviction hearings, in this case its exclusion was proper and we find no clear showing that the trial court abused its discretion in so doing.

Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court dismissing appellee's petition for post-conviction relief.

*Judgment reversed.*

CELEBREZZE, C.J., LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

SWEENEY and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The issue in the case before this court is *not* whether counsel breached an essential duty to appellee in conducting his defense or whether such a breach severely prejudiced appellee. Nor, for that matter, is the issue determinative of whether appellee is entitled to a new trial. Rather, the question to be resolved centers upon whether there was error to the prejudice of appellee when the trial court refused to admit the testimony of attorney Gary Schweickart and Dr. Willis C. Driscoll as to their respective opinions concerning the competency of appellee's trial counsel as well as appellee's mental state at the time of the offenses.

The trial court excluded testimony from Schweickart on the basis that he was attempting to offer an opinion which embraced an issue ultimately to be decided by the trial judge himself. While it is true that Ohio case law once provided that a question put to a witness was objectionable if it called for an opinion on the ultimate issue, later cases and evidentiary rules demonstrate this is no longer the law in this state. See, *e.g., McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77 [40 O.O.2d 87]. In fact, Evid. R. 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

The Staff Note to Evid. R. 704 provides in part:

"* * * The rule must be read in conjunction with Rule 701 and Rule 702, each of which requires that opinion testimony be helpful to, or assist, the trier of fact in the determination of a factual issue. Opinion testimony on an ultimate issue is admissible if it assists the trier of fact, otherwise it is not admissible. * * *"

An examination of the record reveals that the expert testimony of Schweickart would have assisted the judge as the trier of fact. Schweickart unquestionably has expertise in the practice of criminal defense law in the area of insanity and alcohol-related defenses. He was called upon as an expert to testify to the accepted standard of care in pursuing the insanity defense and to offer an opinion on whether appellee's counsel met that standard.

Obviously, when counsel needs the testimony of an expert witness regarding a legal question, he must call upon a fellow attorney. Expert opinion testimony is necessary to support a claim for legal malpractice in Ohio for civil redress.

This issue was addressed in Annotation (1982), 14 A.L.R. 4th 169, 173:

"* * * [I]t now appears to be the rule that expert evidence is required in a legal malpractice case to establish the attorney's breach of his duty of care except in cases where the breach or lack thereof is so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge and experience of laymen * * *."

Given the simple truth that in a post-conviction proceeding, the defendant has the heavy burden of demonstrating that counsel's performance was deficient and that said performance prejudiced the defense, it comes as a disappointing surprise to discover that the majority has granted the trial court discretionary powers as to whether or not it will even listen to evidence on these two key issues. The question then arises, how else can the lack of the effectiveness of counsel be measured absent the presentation of relevant, material, and competent evidence going to the establishment of these legal predicates?

Accordingly, I respectfully dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.