[Cite as *State v. Miller*, 2012-Ohio-5964.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120109 |
|  |  | TRIAL NO. B-1008051 |
| Plaintiff-Appellee, | : |  |
|  |  |  |
| vs. | : |  |
|  |  | *O P I N I O N.* |
| BRENDA MILLER, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  December 19, 2012

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

SYLVIA SIEVE HENDON, Judge.

{¶1} Defendant-appellant Brenda Miller appeals the judgment of the Hamilton County Court of Common Pleas convicting her of two counts of rape of young boys.

### The Background Facts

{¶2} At trial, two boys, E.E. and L.R., testified that when they were 11 years old, they had had a sexual encounter at E.E.'s home with the 20-year-old Miller. At the time, Miller had been staying at the home with her father.

{¶3} The boys were playing football in E.E.'s living room when Miller told them that they were not tackling each other properly. Miller began to wrestle with the boys and to touch their genital areas. She allowed them to touch her buttocks.

{¶4} Miller went to the basement, retrieved an air mattress, and brought it to the living room. Miller lay on the mattress and told the boys to lie down on either side of her. Miller began to rub her buttocks against L.R. She pretended to be asleep as she pulled down her pants.

{¶5} At one point, Miller did a "bridge" with her body, where she bent her body backwards, put her hands on the ground, and pushed her body upward. E.E. had vaginal intercourse with Miller. Then Miller engaged in fellatio with L.R. L.R. said that his penis began to hurt so he stopped and walked away.

{¶6} L.R. denied having had vaginal intercourse with Miller, although E.E. testified that he had seen L.R. have vaginal intercourse with her.

{¶7} Miller told the boys that she had gotten her sexual behavior from her mother and that she had been doing it since she was little.

{¶8} E.E. testified that the event had occurred in 2009 between Thanksgiving and Christmas, a month before L.R.'s birthday. According to L.R., it had occurred "like December," just before his January birthday. The boys did not report what happened to them at the time.

{¶9} According to E.E.'s mother, Miller's father had lived in her home in the fall of 2009, but he had moved from there by December 1, 2009. She testified that Miller had stayed with her father between Thanksgiving and the first of December.

{¶10} E.E.'s mother testified that in August 2010, L.R. told her what had happened to him and to E.E. The mother reported the abuse to the police.

{¶11} On August 23, 2010, E.E. was evaluated at Children's Hospital. He reported to a social worker there that the sexual encounter had occurred in April 2010.

{¶12} E.E.'s mother testified that when they returned from the hospital, Miller knocked on her door. Miller told her that she was sorry for what she had done, and admitted "to doing the back bridge showing her body parts to the kids." Miller told her that she had been molested and that that was the reason for her behavior.

{¶13} On October 4, 2010, L.R. was evaluated at the hospital. He reported that the offense had occurred about 11 months to a year earlier.

{¶14} For the defense, Miller's grandfather testified that "sometime between the end of November and the first week in December," Miller had come to stay at his home in Columbus, Ohio. He recalled that Miller had arrived at his home on December 5, 2009. She stayed with him for two weeks, and then lived with an uncle in Columbus until she returned to his home on December 28, 2009.

{¶15} Miller was indicted for three counts of rape occurring between December 1 and 31, 2009. The first count alleged that she had engaged in vaginal intercourse with E.E.

The second and third counts alleged that she had engaged in vaginal intercourse and fellatio with L.R.

{¶16} Defense counsel filed a suggestion of incompetency pursuant to R.C. 2945.37, and the court ordered Miller to undergo a competency evaluation. After reviewing a report prepared by a court-appointed psychologist, the court found Miller competent to stand trial.

{¶17} Following a jury trial, Miller was convicted of the first and third counts of rape, and was acquitted of the second count which had alleged vaginal intercourse with L.R. The trial court sentenced her to ten years to life in prison.

### Ineffective Assistance of Counsel

{¶18} In her first assignment of error, Miller argues that she was denied the effective assistance of trial counsel. Specifically, she contends that she was prejudiced by counsel's failure to enter a plea of not guilty by reason of insanity ("NGRI").

{¶19} Reversal of a conviction for ineffective assistance requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. *Strickland* at 684; *Bradley* at paragraph three of the syllabus.

{¶20} Trial counsel's representation is presumed effective, *Strickland* at 690, and this presumption is not overcome here. The failure to pursue an insanity defense is not, per se, ineffective assistance of counsel. *See State v. Decker*, 28 Ohio St.3d 137, 502 N.E.2d 647

(1986); *State v. Sneed*, 63 Ohio St.3d 3, 584 N.E.2d 1160 (1992). Nor is counsel's pursuit of a defense that proves to be unsuccessful. *See State v. Frazier*, 61 Ohio St.3d 247, 255, 574 N.E.2d 483 (1991).

{¶21} A person is not guilty of an offense by reason of insanity only if she proves that, at the time of the commission of the offense, she did not know, as a result of a severe mental disease or defect, the wrongfulness of her acts. R.C. 2901.01(A)(14). Miller contends that she may have been able to establish the insanity defense. She points to language in the competency evaluation report indicating that she had previously been diagnosed as schizophrenic, that she had reported experiencing auditory hallucinations, and that she functioned in the borderline range of intelligence.

{¶22} Defense counsel may have had legitimate tactical grounds for not pursuing an insanity defense. At trial, Miller presented an alibi defense, which would have been inconsistent with an insanity defense, and could have confused the jury. *See State v. Robinson*, 2d Dist. No. 17393, 2001 Ohio App. LEXIS 238 (Jan. 26, 2001). Moreover, an NGRI defense is an affirmative one that Miller would have had to prove by a preponderance of the evidence. *See State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72; *see also* R.C. 2901.05; R.C. 2901.01(A)(14). Defense counsel may well have foregone the presentation of an insanity defense to deprive the state of an opportunity to impeach Miller with damaging information from the report of her mental condition. *See State v. Wilkins*, 5th Dist. No. 95-CA-74, 1996 Ohio App. LEXIS 3800 (Aug. 5, 1996), citing *State v. Cooey*, 46 Ohio St.3d 20, 544 N.E.2d 895 (1989). Where, as here, "there is no showing that counsel did not research the facts or the law, or that he was ignorant of a crucial defense, * * * [we will] defer to counsel's judgment in the matter." *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980), citing *People* v. *Miller*, 7 Cal.3d 562, 573-574, 498 P.2d 1089 (1972).

{¶23} Because counsel's decision not to pursue an NGRI defense was reasonable under the circumstances, Miller cannot demonstrate that counsel's performance was deficient. We overrule the first assignment of error.

### Weight and Sufficiency of the Evidence

{¶24} In her second assignment of error, Miller challenges the weight and sufficiency of the evidence upon which her convictions were based. In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶25} To find Miller guilty of rape, in violation of R.C. 2907.02(A)(1)(b), the jury had to find that Miller had purposely engaged in sexual conduct with a child under the age of 13, whether or not she knew the age of the victim. "Sexual conduct" includes vaginal intercourse and fellatio. R.C. 2907.01(A). Following our review of the record, we have no doubt that a rational juror, viewing the evidence in a light most favorable to the state, could have found that the state had proved that Miller had committed the rape offenses. Therefore, the evidence presented was legally sufficient to sustain Miller's convictions.

{¶26} Miller argues that the victims' testimony lacked credibility because they did not report the offenses for months, their testimony conflicted in certain respects, and the

6

testimony with respect to the date of the offenses was confusing. However, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *See Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We conclude that the jury neither lost its way nor created a miscarriage of justice in finding Miller guilty. We overrule the second assignment of error.

### *Sentencing*

{¶27} In her third assignment of error, Miller argues that the trial court erred by failing to properly advise her at the sentencing hearing regarding postrelease control. The state concedes this error.

{¶28} As the state points out, R.C. 2967.28(B) requires the inclusion of a mandatory postrelease-control term of five years for each prison sentence for felonies of the first degree and felony sex offenses. *See State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110. This is true even for an offender who receives an indefinite or life sentence. *Id.* at ¶ 20.

{¶29} Miller was convicted of rape in violation of R.C. 2907.02, which is both a first-degree felony and a felony sex offense. R.C. 2907.02(B); R.C. 2967.28(A)(3). Therefore, R.C. 2967.28(B) required that a five-year term of postrelease control be included in her sentence. Consequently, we sustain the third assignment of error.

***Conclusion***

{¶30}   Therefore, we affirm the trial court's judgment with respect to the findings of guilt.   But we remand the matter to the trial court for the proper imposition of postrelease control under R.C. 2929.191.   In all other respects, the judgment of the trial court is affirmed.

Affirmed in part, reversed in part, and cause remanded.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.**, concur.

Please note:
> The court has recorded its own entry on the date of the release of this opinion.