[Cite as *State v. Maxwell*, 2020-Ohio-3027.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 107758 |
| v. | : | |
| CHARLES MAXWELL, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-05-475400-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine Mullin, Assistant Prosecuting Attorney, *for appellee.*

Timothy Young, Ohio Public Defender, and Rachel Troutman, Adrienne M. Larimer, and Natalie Presler, Assistant State Public Defenders, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Charles Maxwell, appeals the trial court's decision denying his motion for postconviction relief. For the reasons that follow, we affirm the trial court's decision.

{¶ 2} In 2007, Maxwell was convicted by a jury and sentenced to death for the aggravated murder of Nichole McCorkle. The Supreme Court of Ohio affirmed his convictions and death sentence in *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, *reconsideration denied*, *State v. Maxwell*, 139 Ohio St.3d 1420, 2014-Ohio-2487, 10 N.E.3d 739 ("*Maxwell*"). The United States Supreme Court denied certiorari.

{¶ 3} On August 11, 2008, while his direct appeal was pending before the Ohio Supreme Court, Maxwell timely filed a petition for postconviction relief, which set forth 12 grounds for relief. He filed a first amendment to the petition two days later along with a motion for discovery. Two weeks later, Maxwell filed a second amendment to the petition. In October 2008, the trial court denied Maxwell's request for discovery, and the state filed its opposition to Maxwell's petition. In November 2008, the state filed with the trial court proposed findings of fact and conclusions of law, requesting denial of Maxwell's petition.

{¶ 4} On September 2, 2016, the trial court summarily denied Maxwell's petition. On August 31, 2018, the trial court adopted the state's second proposed findings of fact and conclusions of law. Maxwell now appeals, raising four assignments of error for our review.

## I. Denial of Discovery

{¶ 5} In his first assignment of error, Maxwell contends that the trial court erred by denying his postconviction petition without allowing him to conduct discovery. He argues that without the opportunity to conduct discovery, he was

unable to fully produce evidence outside the record to withstand his burden to support his postconviction claims to warrant an evidentiary hearing.

{¶ 6} The decision to grant or deny a request for discovery with respect to a petition for postconviction relief rests within the trial court's discretion. *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28. The long-standing rule in Ohio is that a convicted criminal defendant has no right to additional or new discovery, whether under Crim.R. 16 or any other rule, during postconviction relief proceedings. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159, 718 N.E.2d 426 (1999), citing *State v. Spirko*, 127 Ohio App.3d 421, 429, 713 N.E.2d 60 (3d Dist.1998). Nevertheless, Maxwell contends that discovery may be warranted when the "petitioner sets forth operative facts that demonstrate a substantive claim for relief." *State v. McKelton*, 12th Dist. Butler No. CA 2015-02-028, 2015-Ohio-4228, ¶ 41.

{¶ 7} In this case, we find no abuse of discretion. As will be discussed in addressing his third and fourth assignments of error, Maxwell's petition for postconviction relief did not set forth sufficient operative facts justifying additional discovery. Moreover, Maxwell has not demonstrated how he was prejudiced by the denial to conduct additional discovery. We note that his petition, which raises 12 grounds for relief, is supported with over 20 exhibits, including affidavits from both lay persons and experts, court filings, police reports, and medical records. It does not appear that Maxwell's presentation of materials to support his petition was constrained in any way by the trial court's denial of discovery.

{¶ 8} Maxwell's first assignment of error is overruled.

## II. Findings of Fact and Conclusions of Law

{¶ 9} Maxwell petitioned for postconviction relief and requested discovery in August 2008. The court denied Maxwell's request to conduct discovery. The state opposed his petition and submitted proposed findings of fact and conclusions of law in October and November 2008, respectively. Maxwell filed his reply petition and requested that the court draft its own findings of fact and conclusions of law rather than adopting the state's submission. In September 2016, the trial court summarily denied Maxwell's petition for postconviction relief. The trial court also denied Maxwell's subsequent request for the trial court to issue findings of fact and conclusions of law.

{¶ 10} The state then requested permission to submit proposed findings of fact and conclusions of law. Maxwell opposed the state's request, contending that the trial court was required to issue its own findings of fact and conclusions of law. The trial court granted the state's request and overruled Maxwell's objections. On October 31, 2016, the state filed its second set of proposed findings of fact and conclusions of law, which included citing to the Supreme Court's opinion addressing Maxwell's direct appeal. Approximately a year later, in 2017, Maxwell objected to the state's second submission contending that the trial court is obligated to issue its own findings of fact and conclusions of law; Maxwell did not submit his own proposed findings of fact or conclusions of law. A year later, on

August 31, 2018, the trial court adopted the state's 2016 proposed findings of fact and conclusions of law.

{¶ 11} Maxwell contends in his second assignment of error that the trial court violated his due process rights when it failed to provide him with the court's own findings of fact and conclusions of law. Specifically, he contends that the trial court improperly delegated to the state the court's deliberative process mandated by R.C. 2953.21(C) by adopting the state's findings of fact and conclusions of law verbatim after it summarily denied Maxwell's petition.

{¶ 12} When a trial court denies a postconviction relief petition, R.C. 2953.21(G) requires the trial court to make and file findings of fact and conclusions of law setting forth its findings on each issue presented and a substantive basis for its disposition of each claim for relief advanced in the petition. *See, e.g., State v. Lester*, 41 Ohio St.2d 51, 322 N.E.2d 656 (1975). The purpose of requiring findings of fact and conclusions of law is to apprise the petitioner of the basis for the court's disposition and to facilitate meaningful appellate review. *See, e.g., State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19, 530 N.E.2d 1330 (1988).

{¶ 13} When a party's proposed findings of fact and conclusions of law are accurate in law and in fact, nothing prohibits a trial court from adopting that party's proposed findings of fact and conclusions of law in a postconviction proceeding. *State v. Williams*, 8th Dist. Cuyahoga No. 85180, 2005-Ohio-3023, ¶ 35, citing *State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205 (1st Dist.1994). "In the absence of demonstrated prejudice, it is not erroneous for the trial court to

adopt, in verbatim form, findings of fact and conclusions of law which are submitted by the state." *State v. Thomas*, 8th Dist. Cuyahoga No. 87666, 2006-Ohio-6588, ¶ 15, citing *State v. Powell*, 90 Ohio App.3d 260, 263, 629 N.E.2d 13 (1st Dist.1993). Moreover, a trial court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law. *State v. Jester*, 8th Dist. Cuyahoga No. 83520, 2004-Ohio-3611, ¶ 16; *see also Thomas* at *id.*

{¶ 14} Maxwell does not discount that trial court can delegate the writing responsibility to the parties but contends that the trial court cannot delegate its deliberative process. In support, he cites to *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, and *State v. Pickens*, 1st Dist. Hamilton No. C 130004, 2016-Ohio-5257.

{¶ 15} In *Roberts*, the Supreme Court vacated the defendant's death sentence and remanded for resentencing, because its "confidence in the trial court's sentencing opinion [had been] undermined by the fact that the trial judge directly involved the prosecutor in preparing the sentencing opinion and did so on an ex parte basis." *Roberts* at ¶ 159. The court concluded that the trial court had failed to follow the "proper process," because the "delegation of any degree of responsibility in [its] sentencing opinion does not comply with [the mandate of] R.C. 2929.03(F)" that "the trial court itself will draft the death-sentence opinion," and does not comport with the court's "firm belief that the consideration and imposition of death are the most solemn of all the duties that are imposed on a

judge." *Id.* at ¶ 160. It determined that because of the ex parte communication, the trial court's "grievous violation of the statutory deliberative process" was not harmless error nor could it be corrected on appeal. *Id.* at ¶ 162-163.

{¶ 16} In *Pickens*, the First District applied *Roberts* to an appeal from a postconviction proceeding.[1] It distinguished between the duty imposed under the death-penalty statutes and those under postconviction proceedings, finding that although a court may not delegate the drafting responsibility under R.C. 2929.03(F), it may do so under R.C. 2953.31(C), but that "the deliberative process may not be delegated." *Pickens* at ¶ 19. The *Pickens* court found that the record must show that trial court engaged in the deliberative process based on its "consideration of the petition, supporting affidavits, documentary evidence, and the files and records of the proceedings leading to the petitioner's conviction, to determine whether 'there are substantive grounds for relief.'" *Id.* at ¶ 19. The *Pickens* court also relied on *Roberts* in finding that a defendant is denied due process when the court engages in ex parte communication with the state, and the court's findings of fact and conclusions of law are a product of that ex parte communication. *Id.* at ¶ 22. When this occurs, the trial court's deliberative process has been delegated and a defendant's due process rights have been violated. *Id.*

---

[1] However, in *State v. Jackson*, 11th Dist. Trumbull No. 2008-T-0024, 2010-Ohio-1270, and *State v. Ahmed*, 7th Dist. Belmont No. 05-BE-15, 2006-Ohio-7069, those districts found that the holding in *Roberts* does not apply to postconviction proceedings. Nevertheless, these courts addressed *Roberts* in the context of ex parte communication and found that if the findings of fact and conclusions of law filed by the court are a result of ex parte communication, a defendant is denied due process.

{¶ 17} Notwithstanding the procedural distinction in *Roberts*, both *Roberts* and *Pickens* involved the trial court's engagement in ex parte communications with the state in rendering its judicial opinions. That did not occur in this case, and there is no evidence that Maxwell was denied due process of law. *Roberts* and *Pickens* are distinguishable. Accordingly, when the state's submission of proposed findings of fact and conclusions of law are not based on ex parte communications, but as a result of an order by the court allowing the parties to each submit their own proposed findings of fact and conclusions of law, no due process violation occurs.

{¶ 18} Maxwell argues that he was not given an opportunity to participate in submitting proposed findings of fact and conclusions of law. We disagree. Much like when the state filed its own proposed findings in 2008, which was prior to the trial court issuing its summary decision to deny Maxwell's petition, Maxwell could have submitted his own proposed findings of fact and conclusions of law for the court to consider. Instead, he merely objected to the state's proposal and asked the court to issue its own findings. The trial court did not summarily deny Maxwell's petition until 2016. Accordingly, Maxwell had approximately eight years to file his own submission for the trial court to review, yet he failed to set forth the findings and conclusions he wanted the trial court to make in deciding whether to grant or deny his petition. Maxwell had the opportunity; he chose not to participate.

{¶ 19} Finally, the fact that the trial court ultimately adopted the state's second proposed findings of fact and conclusions of law did not deny Maxwell due

process. The trial court's 2016 summary denial was not final or appealable; thus, the trial court could have changed its decision. Additionally, considering the amount of time that had passed, as well as the Supreme Court's issuance of its decision regarding Maxwell's direct appeal, it was not unreasonable for the state to resubmit proposed findings.

{¶ 20} Upon reviewing the state's proposed findings of fact and conclusions of law, we find that they were sufficiently accurate and afforded Maxwell the right to meaningful appellate review. Moreover, we find no evidence that the trial court failed to review and consider Maxwell's petition in its entirety. Admittedly, the trial court's adopted findings of fact and conclusions of law contain the same typographical errors and omissions that are in the state's proposal. However, this does not establish that the trial court failed to review the findings or conclusions before adopting them verbatim. Finally, Maxwell does not allege or explain how he was prejudiced by the trial court's verbatim adoption of the state's proposed findings and conclusions. Accordingly, the trial court did not violate his due process rights.

{¶ 21} Maxwell's second assignment of error is overruled.

## III.  Petition for Postconviction Relief

{¶ 22} Maxwell contends in his fourth assignment of error that the trial court erred in dismissing his petition for postconviction relief when he presented sufficient operative facts to merit relief, or at a minimum, an evidentiary hearing. Relative to the relief requested in grounds 1, 2, 3, and 6 of his petition, Maxwell

further contends in his third assignment of error that the trial court erred by applying the doctrine of res judicata to bar his claims for relief. These assignments of error will be addressed together.

{¶ 23} A petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment. *State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 10. Postconviction relief is not a constitutional right; it is a narrow remedy that gives the petitioner no more rights than those granted by statute. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). It is a means to resolve constitutional claims that cannot be addressed on direct appeal because the evidence supporting the claims is outside the record. *State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975). To prevail on a petition for postconviction relief, the petitioner must establish a violation of his constitutional rights that renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 24} In a petition for postconviction relief, the petitioner must state all the grounds for relief on which he relies, and waives all other grounds not identified. R.C. 2953.21(A)(4). A criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing. *Calhoun* at 282, citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). Before granting an evidentiary hearing on the petition, the trial court must determine whether there are substantive grounds for relief, i.e., whether there are grounds to believe there was such a denial or infringement of the

rights of the petitioner so as to render the judgment void or voidable under the United States or Ohio Constitutions. *Calhoun* at 283. In determining whether there are substantive grounds for relief, the court must consider the petition, the supporting affidavits, and the documentary evidence, as well as all the files and records pertaining to the proceedings. R.C. 2953.21(D).

{¶ 25} A trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. The trial court does not abuse its discretion in dismissing a petition without a hearing if (1) the petitioner fails to set forth sufficient operative facts to establish substantive grounds for relief, or (2) the operation of res judicata prohibits the claims made in the petition. *State v. Abdussatar*, 8th Dist. Cuyahoga No. 92439, 2009-Ohio-5232, ¶ 15.

{¶ 26} With respect to the trial court's conclusion that several of Maxwell's claims were barred by the doctrine of res judicata, a petition for postconviction relief is not the proper avenue to raise issues that were or could have been determined on direct appeal. *See generally State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Ordinarily, when a petitioner introduces evidence in his postconviction petition that is outside of the record, the evidence is sufficient, if not to mandate a hearing, to at least avoid dismissal on the basis of res judicata. *Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169. The evidence submitted in support of the petition "'must meet some threshold standard of cogency; otherwise it would

be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence [that] is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'" *State v. Lawson*, 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (12th Dist.1995), quoting *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 Ohio App. LEXIS 1485, 21 (Mar. 17, 1993). The evidence submitted with the petition must be competent, relevant, and material, and not merely cumulative of or alternative to evidence presented at trial. *State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 16, citing *Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205.

**{¶ 27}** Simply, to overcome the res judicata bar, evidence offered outside of the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record. *Lawson* at *id.*

**{¶ 28}** Additionally, if the submitted evidence outside the record consists of affidavits, the trial court should consider all the relevant factors when assessing the credibility of affidavits. These factors include whether (1) the judge reviewing the postconviction petition is the same judge who presided over the trial; (2) the affidavits submitted contain identical language or appear to have been drafted by the same person, (3) the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner or interested in the petitioner's success, and (5) the affidavits contradict evidence proffered by the defense or are inconsistent with or contradicted by the affiant's trial testimony. *Calhoun*, 86 Ohio St.3d at 284-285, 714 N.E.2d 905.

**{¶ 29}** With these principles and standards in mind, we now address Maxwell's grounds for relief together and out of order where appropriate.

## A. Neurological Evaluation and Brain Dysfunction Evidence

**{¶ 30}** Grounds 1, 2, and 3 of Maxwell's petition for postconviction relief focus on the lack of evidence obtained and presented during both phases of his capital trial regarding Maxwell's purported organic brain dysfunction.

### Procedural History and Facts

**{¶ 31}** On January 19, 2007, trial counsel requested the trial court to allow Dr. John Fabian to perform a neurological evaluation of Maxwell and to allow expert fees. The request was based on information obtained during evaluations by Dr. Michael Aronoff at the court psychiatric clinic and by Dr. Alice Cook at Northcoast Behavioral Healthcare System that revealed that Maxwell was rendered unconscious during a 1999 motorcycle accident. Based on his independent psychiatric evaluation, Dr. Fabian preliminarily concluded that Maxwell suffered from mental health issues and recommended that neurological testing be performed to ascertain Maxwell's condition.

**{¶ 32}** Following the February 2007, competency hearing, the trial court denied the request for a neurological evaluation based, in part, upon the competency reports offered by Drs. Aronoff and Cook. As explained by the Ohio Supreme Court in discussing the issue of whether the court should have appointed a neurologist,

> Trial counsel then stated that they were requesting a neurological evaluation because Maxwell had told them that his life and the way he looks at things were different since that motorcycle accident. Thus,

counsel requested a neurological evaluation to provide "objective medical findings in terms of an MRI or a CAT scan as per Dr. Fabian's recommendation."

During the competency hearing, Dr. Cook testified that she had talked to Maxwell about the motorcycle accident, and he told her that he had received no treatment and had not been hospitalized as a result of the accident.

Dr. Aronoff testified that he had reviewed Maxwell's medical records that showed he was treated at Meridia-Huron Hospital on March 29, 1999, after the motorcycle accident. Dr. Aronoff quoted findings from the medical records that reported that Maxwell was "sitting on motorcycle which was struck from behind by a car at low speed. He was thrown off the bike on to the right side. No loss of consciousness. Was wearing a helmet. Right shoulder, right hip, right elbow, right ankle are painful. No headache or neck pain." Dr. Aronoff also stated that x-rays were taken of Maxwell's shoulder, elbow, ankle, and hip, and they were all unremarkable. However, Dr. Aronoff testified that Maxwell told him that he was rendered unconscious in the motorcycle accident.

*Maxwell* at ¶ 216-218.

**{¶ 33}** In finding no abuse of discretion in denying the request for a neurological evaluation, the Supreme Court explained

Maxwell's medical records showed that he suffered no loss of consciousness and reported no headache or neck pain as a result of that motorcycle accident. Thus, Maxwell's request merely raised the possibility that he had suffered a brain injury as a result of a motorcycle accident. It was not supported by anything in his medical records. Moreover, the medical records contradicted Maxwell's story about what happened after the accident. Maxwell told Dr. Aronoff that he was rendered unconscious, and he told Dr. Cook that he received no medical treatment.

*Id.* at ¶ 225.

**{¶ 34}** The Supreme Court concluded further that trial counsel were not ineffective for failing to request a neurologist to assist in the development of

mitigation.[2] *Maxwell* at ¶ 229.  The court began its discussion by reviewing "Dr.

[Sandra] McPherson's testimony to determine whether she provided counsel with

additional information about Maxwell's head injuries from the motorcycle accident

that required counsel to conduct a further investigation." *Id.* at ¶ 230.

> Dr. McPherson administered the Bender-Gestalt test during her evaluation of Maxwell. She described the Bender-Gestalt as a "copying task" that serves as a low-level screening test.  She testified that there was "some indication [that] his hand might not have been steady, but there were distortions that didn't make a lot of sense, so the question remained as to whether or not there was some kind of organically based anomaly, something that affects how his brain processes information."

> Dr. McPherson testified about past injuries that Maxwell reported suffering.  Maxwell stated that he had been briefly unconscious after falling off a horse but that he did not receive any medical treatment for that incident.  Dr. McPherson also discussed the motorcycle accident and said, "[H]e may have been briefly unconscious. He was certainly conscious when he was seen at the hospital for that one."  Dr. McPherson also stated that there was nothing in Maxwell's medical records showing that he had suffered a traumatic head injury in the motorcycle accident.

> In discussing her final diagnosis, Dr. McPherson stated that Maxwell suffered from an adjustment disorder with depression and probable alcohol dependency.  Dr. McPherson testified that she could not determine whether Maxwell had had a traumatic brain injury and advised that "whoever is working with him next should continue to be aware that this may be there and try to come up with information to either rule it in or out."  She also testified that Maxwell has "some type of cognitive difficulty.  He may have some underlying organic problems and these may have rendered him more likely to react with irritability since that's one of the known things that can occur with certain kinds of organicity making him more prone to act out in a stressful situation such as a relationship that was flawed."

---

[2] The term "trial counsel" is to be read plurally because Maxwell was represented by two capitally certified trial attorneys pursuant to former Sup.R. 20(II)(A) and (B).

*Maxwell* at ¶ 231-233.

{¶ 35} The Supreme Court determined that Dr. McPherson's testing results raised "only the possibility of brain impairment," which the court found was insufficient to find error that his defense team was ineffective for failing to further investigate that Maxwell may suffer from a brain dysfunction.

> Dr. McPherson's testimony about the need for further testing to rule out possible brain impairment appears to be based upon Maxwell's performance on the Bender-Gestalt test. She testified that the Bender-Gestalt test indicated some distortions, but she did not indicate that these results were conclusive as to brain damage. Thus, the Bender-Gestalt results raised only the possibility of brain impairment.

> Maxwell fails to establish that counsel were deficient by failing to request a neurologist for mitigation purposes based on Dr. McPherson's testimony. First, the record does not show that trial counsel failed to investigate the need to request a neurologist after reviewing Dr. McPherson's findings. We cannot infer a defense failure to investigate from a silent record; the burden of demonstrating ineffective assistance is on Maxwell. *See* [*State v.*] *Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶ 244.

> Second, the trial court could have properly denied a motion for a neurologist because Maxwell would have been unable to make a particularized showing of a reasonable probability that the requested expert would aid in his defense. [*State v.*] *Mason*, 82 Ohio St.3d 144, 1998-Ohio-370, 694 N.E.2d 932, syllabus. Dr. McPherson reiterated that Maxwell's medical records did not show that he had suffered a traumatic head injury during the motorcycle accident. Indeed, Dr. McPherson's information about a possible head injury resulted from Maxwell's self-reporting.

> Finally, Maxwell has failed to show that the absence of a neurological evaluation resulted in an unfair trial. *Id.* Dr. McPherson testified that there might be "some underlying organic problems and these *may have* rendered him more likely to react with irritability * * * in a stressful situation." (Emphasis added.) The evidence showed that Maxwell murdered Nichole in retaliation for her testimony. Accordingly, this was a planned murder rather than a sudden encounter involving a stressful situation. Thus, we reject this ineffectiveness claim.

*Maxwell* at ¶ 234-237.

**{¶ 36}** In his first ground for relief, Maxwell contends that the trial court violated his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, by not granting sufficient funds for a neurological evaluation at the time of trial. In his second and third grounds for relief, Maxwell contends that he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, Section 10, of Ohio Constitution because trial counsel failed to investigate and present evidence of Maxwell's organic brain dysfunction during the guilt phase of trial, and failed to present evidence regarding the same during the mitigation phase of trial.

**{¶ 37}** He maintains that these denials were prejudicial because the jury was unable to consider his traumatic brain injury, which allegedly caused his personality to change resulting in criminal behavior. According to Maxwell, it was important for the jury to consider evidence of his organic brain dysfunction in consideration of the R.C. 2903.01(A) murder specifications, and as a relevant R.C. 2929.04 factor during mitigation.

**{¶ 38}** Maxwell supports these grounds for relief with (1) his defense counsel's January 19, 2007, request for a neurological evaluation; (2) a postconviction affidavit from his cousin, Rodney Maxwell, who averred that in the mid-1980s, Maxwell hit his head on a concrete bumper and sought medical treatment for his injuries and suffered headaches thereafter; (3) an affidavit from

Dr. Barry Layton, a board certified clinical neuropsychologist, who stated he evaluated Maxwell following his conviction and opined to a reasonable degree of psychological certainty that Maxwell suffers from significant brain impairment; (4) a single-page facsimile cover page from Howard Memorial Hospital in Arkansas stating that Maxwell was a patient there for two days in August 1986; a (5) a postconviction affidavit from Dr. McPherson, Maxwell's mitigation expert at trial, averring Rodney's affidavit would have confirmed her impression that Maxwell suffered from brain impairment, which would imply potential defects in judgment; (6) Dr. McPherson's February 2007 report prepared for mitigation; and (7) an affidavit from a juror who averred that additional information about Maxwell's brain injury "may have made a difference" at trial.

**Neurological Evaluation**

{¶ 39} The trial court determined that Maxwell's first ground for relief — that the trial court abused its discretion in denying his request for a neurological evaluation — was considered and rejected by the Ohio Supreme Court in his direct appeal and thus, barred by res judicata. Notwithstanding this finding, the trial court also determined that the evidence Maxwell presented outside of the record was "only marginally significant," and that his cousin's account of Maxwell striking his head in the 1980s was available at the time of trial. The trial court also concluded that Dr. Layton's reliance on Rodney Maxwell's account failed to credibly prove that Maxwell suffered from the effects of an organic brain injury. The trial court further discounted Dr. Layton's opinion based on prior cases where this court determined

that Dr. Layton's opinions regarding organic brain injuries on behalf of litigants in criminal and civil cases were "unconvincing." Further, the trial court noted two other experts who opined that Maxwell was competent to stand trial and that he may have been malingering psychiatric symptoms. Finally, to the extent that Maxwell provided evidence outside the record, the court found the evidence only marginally significant and that it did not advance his ground for relief.

{¶ 40} On appeal, Maxwell contends that the trial court's decision that his ground for relief was barred by res judicata was in error because his petition was supported by evidence outside of the record. Moreover, he contends that the trial court's finding that Maxwell "failed to submit credible or competent evidence to show a neurological examination was necessary" is belied by the record, and that it was improper for the trial court to summarily reject Dr. Layton's opinion based on past judicial cases.

{¶ 41} First, we note that Maxwell is misreading the trial court's decision. Maxwell's failure to submit credible or competent evidence was the justification for why the trial court denied his 2007 request for a neurological evaluation; it was not the trial court's basis for denying postconviction relief.

{¶ 42} Addressing Maxwell's first ground for relief, we find that the trial court did not abuse its discretion in finding that res judicata prohibits relief. In his direct appeal to the Supreme Court, Maxwell raised as his 12th proposition of law that the trial court erred by failing to appoint a neurologist to develop mitigation. As the Supreme Court clarified, "trial counsel did not request the appointment of a

neurologist for purposes of mitigation"; rather the request was "in the context of his competency." *Maxwell* at ¶ 222. Despite this procedural hurdle, the Ohio Supreme Court concluded that the medical records contained in the record did not reveal or support that Maxwell had suffered any brain injuries — the neurological request "merely raised the possibility that he suffered a brain injury" following a 1999 motorcycle accident. *Id.* at ¶ 227. Because of the lack of evidence, the Ohio Supreme Court concluded that it was not an abuse of discretion for the trial court to have denied his request for a neurologist. *Id.* at ¶ 228.

{¶ 43} Admittedly, the evidence attached to Maxwell's petition in support of his mid-1980s head injury and the report of Dr. Layton were not part of the trial court record and thus not available on direct appeal. However, Maxwell is attempting to relitigate an issue that was addressed on direct appeal and essentially is asking this court to conclude that the trial court erred during pretrial proceedings based on evidence that the trial court did not have the benefit of reviewing when Maxwell brought the request for an evaluation before the trial court.

{¶ 44} Even considering the merits, we find no abuse of discretion in rejecting this ground for relief without an evidentiary hearing. Maxwell attached to his petition affidavits and evidence that purportedly reveal that he had in fact suffered a brain injury in the past. Maxwell's cousin averred through affidavit that he witnessed Maxwell hit his head on a concrete barrier in the mid-1980s and that Maxwell suffered from headaches thereafter. Dr. Layton opined in his affidavit that "the cause of Maxwell's brain impairment appears to be a traumatic brain injury that

he suffered in August 1986." This opinion was based on the cousin's account of what occurred, Maxwell's own recollection, and a one-page facsimile cover page from a hospital in Arkansas that indicates that Maxwell was a patient there from August 6, 1986 until August 7, 1986. Although the facsimile cover sheet states that the records from Maxwell's August 1986 hospital visit were destroyed, Dr. Layton relies extensively on the facsimile to support his conclusion that Maxwell must have been treated at the hospital for a head injury.

{¶ 45} We note that this mid-1980s parking lot altercation occurred prior to the 1999 motorcycle accident, which was the incident prompting trial counsel to request a neurological evaluation. During his examinations with Drs. Aronoff and Cook, Maxwell did not indicate that he suffered from a head injury in the mid-1980s, although he reported it to Dr. McPherson. Additionally, if, as Dr. Layton opined, this parking lot incident caused Maxwell to suffer a traumatic brain injury that caused severe changes in Maxwell's day-to-day functioning, including legal problems, the brain injury would have been discernible to both Drs. Aronoff and Cook in their evaluations, and would have bolstered Dr. Fabian's request for a neurological evaluation. However, the focus of the neurological evaluation request was based on the 1999 motorcycle accident.

{¶ 46} Dr. McPherson's report noted past injuries suffered by Maxwell, including falling off a horse, the parking lot altercation, and the motorcycle accident. Dr. McPherson's report noted that her testing and evaluation of Maxwell did not reveal results that "were conclusive of brain damage." Again, if, as Dr. Layton

opined, the parking lot altercation caused Maxwell to suffer from a traumatic brain injury, the injury would have manifested itself in the testing conducted by Dr. McPherson.

{¶ 47} Maxwell was certainly available to disclose to Drs. Aronoff and Cook that he suffered a head injury prior to the 1999 motorcycle accident because he disclosed this information to Dr. McPherson before he was even evaluated by Drs. Aronoff and Cook. Additionally, the Arkansas hospital facsimile cover page is only marginally significant because it does not disclose the nature of the visit or treatment sought. And Dr. Layton's finding that "the hospital record of significance with respect to neurological dysfunction is a note from Howard Memorial Hospital confirming Maxwell's stay on 8/6/1986-8/7/1986" is entirely speculative and insufficient to establish substantive grounds for relief. *State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, ¶ 63 (mere speculation is not a basis for relief under R.C. 2953.21).

{¶ 48} Moreover, we note that information regarding the 1980s parking lot altercation was available at the time of trial and on direct appeal because Dr. McPherson's report indicates that Maxwell reported he suffered a head injury following the 1980s parking lot incident that required him to be hospitalized for two days. Despite this incident being included in her report, the record does not demonstrate that trial counsel raised this purported injury as a basis for justifying a neurological evaluation. And because Dr. McPherson's report was part of the trial court record, it was also available on direct appeal to support any argument

regarding trial counsel's ineffectiveness. The focus at trial and on direct appeal involved Maxwell's purported head injury from a 1999 motorcycle accident, not any injury suffered in the 1980s.

{¶ 49} Accordingly, the trial court did not abuse its discretion in rejecting Maxwell's first ground for relief without an evidentiary hearing.

**Brain Dysfunction Evidence — Guilt Phase**

{¶ 50} The trial court determined that Maxwell's third ground for relief — trial counsel's failure to investigate and present evidence of Maxwell's organic brain dysfunction during his guilt phase at trial — was barred by res judicata because the issue was addressed on direct appeal. Nevertheless, the trial court addressed the merits of this argument and found that contrary to Maxwell's claim, trial counsel did investigate the claim of an organic brain injury when the issue was raised by Dr. Fabian in 2007. The trial court found that counsel's choice to not present evidence of a possible brain injury to negate prior calculation and design may have been strategic because Maxwell's defense at trial was actual innocence. The trial court concluded that a defense that Maxwell had diminished capacity due to an organic brain injury would have necessarily required an admission that Maxwell murdered Nichole, which was contrary to their trial theory.

{¶ 51} On appeal, Maxwell reiterates the arguments he raised in his petition that trial counsel rendered ineffective assistance during trial. He contends that the trial court abused its discretion in discounting and rejecting Dr. Layton's opinion as "speculative," and that the trial court ignored Dr. Layton's testing and conclusions.

He contends that Dr. Fabian alerted counsel that Maxwell may suffer from organic brain damage yet did not investigate those injuries. Additionally, he maintains that counsel knew that any evidence of brain impairment may have neutralized any argument that he malingered his mental health symptoms. In support, he directs this court to Dr. McPherson's postconviction affidavit in which she avers that she advised counsel that if brain dysfunction was present, Maxwell's behavior during testing was in accordance with his neurological dysfunctions. Additionally, Maxwell maintains that if counsel had obtained evidence of his brain dysfunction, the defense could have challenged the state's theory at trial that he acted with prior calculation and design.

{¶ 52} We find that Maxwell's third ground for relief is barred by res judicata, but for different reasons than found by the trial court. In his direct appeal, Maxwell raised as his fourth proposition of law that he received ineffective assistance of counsel during the guilt phase of trial. *Maxwell* at ¶ 74. Despite raising this proposition of law, Maxwell did not raise any argument about trial counsel's failure to investigate or present evidence of any brain dysfunction during the guilt phase of trial. In his postconviction petition, Maxwell contends that his trial counsel was ineffective because no further investigation regarding brain dysfunction was conducted, even though Dr. McPherson's report indicated that he sustained a head injury in the 1980s that caused him to be hospitalized. As evidenced by the argument advanced, this issue was available during direct appeal. Accordingly,

because the issue could have been raised on direct appeal, it is barred by res judicata in postconviction proceedings.

{¶ 53} And notwithstanding our conclusion that the issue is barred by res judicata, the record reveals that trial counsel attempted to secure a neurologist for use during trial — this was the basis for Maxwell's first and twelfth propositions of law in his direct appeal. *Maxwell* at ¶ 165, 214. Trial counsel cannot be deemed ineffective when the trial court denies the request for an evaluation.

{¶ 54} Moreover, and as the trial court noted, the presentation of evidence regarding Maxwell's brain dysfunction would have been inconsistent with his theory at trial, which was actual innocence. *See State v. Miller*, 1st Dist. Hamilton No. C-120109, 2012-Ohio-5964, ¶ 22 (counsel may have had legitimate tactical ground for not pursuing an insanity defense because it would been inconsistent with his alibi defense presented at trial). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). "'Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client.'" *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976).

{¶ 55} We can glean from the record that the strategy employed during trial was possibly at Maxwell's behest. For example, during the competency hearing, counsel advised the court that they had been "begging him to come up with some sort of meaningful defense or anything along those lines." (Tr. 47). Additionally,

conversations were nonproductive with Maxwell when discussing options and trying "to come up with some sort of meaningful defense in terms of defending this crime either from the guilt and/or penalty phase." (Tr. at *id.*) And during mitigation, Dr. McPherson reported and testified that Maxwell "is maintaining his innocence of the crime." Finally, as the Ohio Supreme Court noted, "Maxwell has also refused to accept responsibility for murdering Nichole." *Maxwell* at ¶ 285. Therefore, the strategy to not set forth evidence of Maxwell's diminished capacity to negate the state's evidence of premeditation was trial strategy consistent with the defense of raising reasonable doubt to show that he was actually innocent.

{¶ 56} Even without applying the principles of res judicata, we find that Maxwell has not set forth sufficient operative facts to establish that counsel's performance fell below an objective standard of reasonableness in its investigation and presentation of evidence during the guilt phase of trial. Accordingly, we find no abuse of discretion by the trial court in rejecting this ground for relief without an evidentiary hearing.

**Brain Dysfunction Evidence — Mitigation Phase**

{¶ 57} The trial court found that Maxwell's claim in his second ground for relief regarding counsel's ineffectiveness in presenting mitigation evidence about any purported brain dysfunction is barred by res judicata because the Ohio Supreme Court held that the trial court properly denied Maxwell's request for a neurological evaluation, and because the information regarding the mid-1980s parking lot

incident that caused Maxwell to allegedly suffer a "traumatic brain injury" was available before trial.

{¶ 58} The trial court also considered the merits of Maxwell's claim and determined that Maxwell's "mitigation strategy depended on calling his relatives and acquaintances to testify as to his general history of good character, that he was a versatile and dependable worker, an upstanding neighbor, a positive role model, and a good family member, as well as providing residual doubt" about whether Maxwell actually committed the offense as charged.

{¶ 59} On appeal, Maxwell contends that evidence of an organic brain dysfunction would have been a significant mitigating factor.

{¶ 60} We find that res judicata bars Maxwell's second ground for relief because this issue was addressed on direct appeal, and the evidence attached to Maxwell's petition is irrelevant and immaterial to warrant relief. The Supreme Court found that counsel was not ineffective for failing to request a neurologist for mitigating purposes because (1) the record was silent regarding whether counsel failed to further investigate the need for a neurological evaluation after reviewing Dr. McPherson's findings; (2) Maxwell was unable to make a particularized showing of a reasonable probability that the requested expert would have aided in his defense; and (3) Maxwell failed to demonstrate that the absence of a neurological evaluation resulted in an unfair trial. *Maxwell* at ¶ 235-237.

{¶ 61} Maxwell attempts to remedy these deficiencies with the affidavits of his cousin and Dr. Layton. However, as previously discussed, the parking lot

incident was known at the time of trial because it is referenced in Dr. McPherson's report. Despite this notation, Dr. McPherson did not rely on it when evaluating any potential brain dysfunction.

{¶ 62} Additionally, Maxwell could have reported this 1980s parking lot incident to Drs. Aronoff, Cook, and Fabian. The focus of the request for a neurological evaluation was based on a motorcycle accident that occurred in 1999. As previously discussed, any organic brain dysfunction would have manifested or become apparent during Maxwell's evaluations with the other medical experts.

{¶ 63} Finally, Dr. Layton's opinion is based partly on speculation — i.e., the destroyed medical records from the Arkansas hospital. Maxwell again places much emphasis on the fact that Dr. Layton was able to determine that Maxwell suffered from an organic brain dysfunction based solely on his examination of Maxwell — "the examination alone definitively demonstrates brain impairment, particularly in the anterior of the brain (the frontal cerebrum)." However, the record clearly demonstrates that at least four other physicians interviewed and evaluated Maxwell, and none were able to definitively diagnosed Maxwell with an organic brain dysfunction. Accordingly, we cannot say that trial counsel was ineffective for not further investigating and presenting mitigating evidence regarding brain dysfunction based on the evidence available to counsel at the time of trial.

{¶ 64} Notwithstanding our conclusion, we note that this is not a case where no evidence of Maxwell's psychological or mental status was presented during mitigation. Dr. McPherson testified as a defense mitigation witness about Maxwell's

mental status, including test results that showed his low intelligence, and possible neurological problems. In fact, she testified "that Maxwell has come cognitive difficulty. He may have some underlying organic problems, and these may have rendered him more likely to react with irritability in a stressful situation such as a flawed relationship." *Maxwell* at ¶ 273. Dr. McPherson further testified about Maxwell's background and his drug and alcohol problems, opining that he suffered from alcohol abuse and probably dependency. Finally, she testified about Maxwell's prison records that showed compliance with authority and that he had the skills to adjust to prison life and was thus amenable to a life sentence.

{¶ 65} The presentation of mitigating evidence is a matter of trial strategy. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 74. Nothing in the record indicates that counsel failed to investigate any further indication of an organic brain dysfunction. Furthermore, the mitigation evidence presented was a matter of strategy to maintain consistency with the evidence and the defense theory presented during the guilt phase of trial.

{¶ 66} Much like the Ohio Supreme Court found in his direct appeal when addressing lack of mitigation, we also find that Maxwell has failed to show prejudice or that there was a reasonable likelihood of a different outcome had defense counsel presented additional evidence that Maxwell may suffer from an organic brain dysfunction. Maxwell attempts to establish prejudice by providing an affidavit from a trial juror that information of a brain injury "may have made a difference" during mitigation. The affidavit is purely based on speculation, which is insufficient to

grant relief under R.C. 2953.21. *See Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, ¶ 63. Moreover, because Evid.R. 606(B) would prohibit Maxwell from using the juror's statement to impeach a verdict, the juror's testimony at an evidentiary hearing would have been inadmissible. *See State v. Jones*, 9th Dist. Summit No. 28063, 2019-Ohio-289, ¶ 76, citing *State v. Morgan*, 10th Dist. Franklin No. 95APA03-382, 1995 Ohio App. LEXIS 5130, 3 (Nov. 21, 1995) (concluding that although it was necessary for appellant to submit affidavits in order for the trial court to determine whether he was entitled to a hearing, once the trial court granted that hearing, it became necessary for him to produce admissible evidence under the rules of evidence). Accordingly, Maxwell has failed to cure the prejudicial impediment for this court to find that he was deprived his constitutional right to effective assistance of counsel.

{¶ 67} Even without applying the principles of res judicata, we find that Maxwell has not set forth sufficient operative facts to establish that counsel's performance fell below an objectively reasonable standard in its presentation of evidence during the mitigation phase of trial. Accordingly, we find no abuse of discretion by the trial court in rejecting this ground for relief without an evidentiary hearing.

**B. Actual Innocence**

{¶ 68} The state claimed that Maxwell killed Nichole in retaliation for her grand jury testimony that led to his subsequent indictment for felonious assault. The alleged felonious assault occurred on October 6, 2005. Nichole testified before

the grand jury on November 23, 2005, regarding the assault, and the grand jury indicted Maxwell for felonious assault, abduction, and domestic violence. Due to the Thanksgiving holiday weekend, the indictment was not filed until November 28, 2005. However, Maxwell killed Nichole during the early morning hours of November 27, 2005. Maxwell was indicted for Nichole's murder with a prior calculation and design specification. The aggravated murder count contained four death specifications; however, the jury only found Maxwell guilty of murder in retaliation for testimony in a criminal proceeding (R.C. 2929.04(A)(8), and murder to escape accounting for a crime (R.C. 2929.04(A)(3)). For sentencing purposes and after merger, Maxwell was sentenced to death under the R.C. 2929.04(A)(8) specification — i.e., retaliation.

{¶ 69} In his sixth ground for relief, Maxwell contends that his conviction and sentence are void or voidable because he is actually innocent of the aggravating circumstances. Specifically, he contends that because the state never proved that he was guilty of felonious assault, he could not be found guilty of committing aggravated murder in retaliation or to escape punishment for felonious assault.[3]

{¶ 70} In support of this ground for relief, Maxwell attached to his petition affidavits from (1) his brother, Andy Maxwell; (2) Andy's friend, La-Tonya Kindell;

---

[3] The death specification under R.C. 2929.04(A)(3) merged into the retaliation death specification under R.C. 2929.04(A)(8); accordingly, only the death specification under R.C. 2929.04(A)(8) survives and is subject to review. *See Maxwell* at ¶ 73 and 256 (finding that trial court merged the R.C. 2929.04(A)(3) specification with the murder-in-retaliation specification in R.C. 2929.04(A)(8) before the jury considered its penalty-phase verdict; analyzing death specification only under R.C. 2929.04(A)(8)).

(3) his mother, Earnestine Brewer; (4) his sister, Teresa McNear; (5) his long-time friend, Terrell Tyson; (6) an investigator, Felicia Crawford; and (6) a trial juror; as well as hospital records dated August 14, 2001, where he was treated for abrasions to his face and penis as a result of "domestic assault." Maxwell contends that the testimony from these witnesses would have established that he had a legitimate self-defense claim against the allegations of felonious assault and therefore he had no reason to retaliate against Nichole. And according to Maxwell, had the jury heard this evidence, the result may have been different.

{¶ 71} The trial court concluded that Maxwell's ground for relief was barred by res judicata because the evidence he advanced was available at the time of trial. Moreover, the trial court found the evidence presented outside the record was only marginally significant and did not advance his claim because it did not prove his actual innocence, the assertion of a self-defense claim would have been contrary to his innocence claim at trial, and the evidence actually presented at trial proved that Maxwell did in fact, commit the act of felonious assault against Nichole.

{¶ 72} Maxwell raised a similar issue in his direct appeal as propositions of law 8 and 9. Upon its review, the Supreme Court determined that the state presented sufficient evidence to prove the R.C. 2929.04(A)(8) retaliation specification that Maxwell killed Nichole to prevent her testimony in any criminal proceeding and for testifying against him at the grand jury proceedings. *Maxwell* at ¶ 158 and 163. In fact, the Supreme Court stated: "We hold that Maxwell's guilt of the R.C. 2929.04(A)(8) specification was established by proof beyond a reasonable

doubt." *Id.* at 163. Accordingly, the state did not have to prove the offense of felonious assault, only that Maxwell killed Nichole for testifying against him.

{¶ 73} On appeal, Maxwell does not demonstrate, much less argue, how the trial court abused its discretion in rejecting this ground for relief. Rather, he reiterates that during the trial, the court found that the testimony of John Gregg (the state's sole witness regarding the capital specification) incredible, and that in his second motion for new trial, it was discovered that Gregg received immunity for his testimony. According to Maxwell, Gregg's lack of credibility and the evidence "presented in [his] fourth, fifth, eighth, and ninth grounds for relief" "casts serious doubt on the State's case against [him]," and that he did not kill Nichole in retaliation for testifying against him before the grand jury.

{¶ 74} Admittedly, Maxwell presents evidence dehors the record; however, in order to obtain postconviction relief, Maxwell must claim that "there was such a denial or infringement of his right as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1). Maxwell's claimed constitutional violation is that he is serving a death sentence for a crime he did not commit, which would violate the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. A claim of actual innocence is not itself a constitutional claim, nor does it constitute a substantive ground for postconviction relief. *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 26, citing *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122

L.Ed.2d 203 (1993); *see also State v. Williams*, 8th Dist. Cuyahoga No. 85180, 2005-Ohio-3023, ¶ 31.  Therefore, Maxwell's "actual innocence" claim fails to raise "a denial or infringement of rights under the Ohio Constitution or the Constitution of the United States" as required by R.C. 2953.21.

{¶ 75} Accordingly, we find no abuse of discretion by the trial court in rejecting this ground for relief.

## C.  Effective Assistance of Counsel

{¶ 76} Nine of Maxwell's postconviction claims sought relief on the grounds that his trial counsel were constitutionally ineffective in investigating, preparing, and presenting his case during both the guilt and mitigating phases of trial.[4]

{¶ 77} To prevail on a claim of ineffective assistance of counsel, a postconviction petitioner must demonstrate that counsel's (1) performance fell below an objective standard of reasonableness, and (2) deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 13 (1989).  When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Strickland* at 689.  To establish

---

[4] Maxwell's second and third grounds for relief, which also claim a deprivation of effective assistance of counsel, were previously discussed and rejected in this opinion; they will not be addressed again.

resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.*

**Grounds 4, 5, and 9 — Guilt-Phase Evidence**

{¶ 78} Grounds 4, 5, and 9 each contend that Maxwell's trial counsel were ineffective in investigating and presenting his case during the guilt phase of his trial. Respectively, in his fourth, fifth, and ninth grounds for relief, Maxwell contends that his sentence is void or voidable because trial counsel failed to (1) investigate the felonious assault charge that was the premise for the aggravating circumstance, (2) investigate the actual crime of felonious assault, and such investigation would have revealed that Maxwell did not act with prior calculation and design; and (3) present several necessary witnesses in his defense, specifically about Maxwell's tumultuous relationship with Nichole

{¶ 79} Maxwell supports grounds 4, 5, and 9 of his petition with affidavits from (1) his brother, Andy Maxwell, (2) Andy's friend La-Tonya Kindell, (3) his sister Teresa McNear, and (4) his mother, Earnestine Brewer; and hospital records dated August 2001 when he was treated for injuries caused by his "girlfriend" during a "domestic assault." Maxwell maintains the investigation and presentation of witnesses regarding the felonious assault offense would have provided the jury with the complete story that the murder of Nichole was not in response to her grand jury testimony, but instead due to their tumultuous relationship and Maxwell's despair over Nichole's actions, including observing her with another man. Finally, Maxwell contends that counsel's strategy to maintain his innocence did not absolve them of

their duty to investigate the felonious assault charge, and the supporting evidence presents sufficient operative facts to establish that his trial counsel were ineffective.

{¶ 80} The trial court found that the affidavits submitted in support of his petition do not set out sufficient operative facts that the victim was the aggressor and provoked Maxwell into committing felonious assault or aggravated murder. The court determined that if Andy Maxwell or La-Tonya Kindell would have testified similarly to what is stated in their affidavits, their testimony would have discounted the defense theory of actual innocence. Additionally, the court found that the evidence of past altercations between Nichole and Maxwell does not disprove that he acted with prior calculation and design, or that Nichole provoked him. The court found the affidavits marginally significant. Moreover, the court noted that the Supreme Court rejected Maxwell's argument that he acted spontaneously in killing Nichole. *Maxwell* at ¶ 149-151.

{¶ 81} In his direct appeal, Maxwell raised as his fourth proposition of law that he received ineffective assistance of counsel during the guilt phase of trial. *Maxwell* at ¶ 74. Despite raising this issue, Maxwell did not raise any challenge regarding trial counsel's failure to investigate the felonious assault charge or the presentation of evidence to refute that he acted in retaliation or with prior calculation of design. Accordingly, because the issue could have been raised on direct appeal, it is barred by res judicata in postconviction proceedings.

{¶ 82} Even reviewing the merits of these grounds for relief, we find no abuse of discretion by the trial court. The affidavits and medical records Maxwell attached

to his petition do not set forth sufficient operative facts to demonstrate that trial counsel was ineffective for failing to investigate the felonious assault offense.

{¶ 83} The evidence Maxwell submits purportedly proves that he acted in self-defense when Nichole suffered the injury that prompted the underlying felonious assault charge, the two had a tumultuous relationship, and the murder was a spontaneous crime of passion. However, as the Ohio Supreme Court concluded, the state did not have to prove that Maxwell committed the act of felonious assault, only that Nichole was murdered in retaliation for giving grand jury testimony against Maxwell. *Maxwell* at ¶ 154-163. Whether Maxwell would have been found guilty of felonious assault in the subsequent indictment is irrelevant to whether Maxwell purposely killed Nichole for testifying before the grand jury or failing to change her testimony as he requested.

{¶ 84} Moreover, in his direct appeal, Maxwell challenged the sufficiency of the evidence, contending that the state failed to prove (1) that he acted with prior calculation and design, (2) his guilt on the witness-murder specification, and (3) that he killed Nichole to prevent her from testify in any criminal proceeding because the felonious assault charge was not pending at the time of the murder. *See Maxwell* at ¶ 145-164. (Propositions of Law No. 7, 8, and 9). In making these arguments, he asserted that the evidence showed that he spontaneously shot Nichole after observing her with another man, and kissing him goodnight, and receiving phone calls from the man at home. *Maxwell* at ¶ 149. In rejecting this argument, the Ohio Supreme Court focused on the evidence that showed that Maxwell shot Nichole in

retaliation for her failure to change her grand jury testimony about the felonious assault. *Maxwell* at ¶ 150, 157.

{¶ 85} The record demonstrates that, Maxwell's theme at trial was that he was innocent of the charges. When this theme proved unsuccessful, his theme on direct appeal was that the murder of Nichole was not out of retaliation and thus, not based on prior calculation or design, but rather based on a crime of passion after seeing Nichole with another man. Maxwell now advances a theme of "self-defense" for the felonious assault charge with evidence that he and Nichole had a tumultuous relationship. This new evidence and theory are merely alternative theories to that presented at trial and on direct appeal. "'The mere existence of an alternative theory of defense, however, is insufficient to establish ineffective assistance of counsel.'" *State v. Tenace*, 6th Dist. Lucas No. L-05-1041, 2006-Ohio-1226, ¶ 26, quoting *Combs*, 100 Ohio App.3d at 103, 652 N.E.2d 205.

{¶ 86} Accordingly, we find that the trial court did not abuse its discretion in rejecting grounds 4, 5, and 9 of Maxwell's postconviction petition for relief because he did not set forth sufficient operative facts to establish that trial counsel's performance fell below an objective standard of reasonableness to prove that he was deprived of effective assistance of counsel during the guilt phase of his capital trial. Moreover, the issues raised were or could have been raised on direct appeal; thus, res judicata prohibits the claims made in the petition.

## Grounds 7, 8, 10, and 11 — Mitigation Evidence

{¶ 87} Maxwell raised as grounds for relief 7, 8, 10, and 11 the adequacy and effectiveness of his trial counsel's investigation, preparation, and presentation of his case in mitigation. Respectively, in his seventh, eighth, tenth, and eleventh grounds for relief, Maxwell contends that his sentence is void or voidable because trial counsel failed to (1) present adequate mitigation by utilizing Dr. McPherson as both an investigator and mitigation specialist; (2) investigate and present several necessary witnesses to support the R.C. 2929.04(B)(1) and (2) mitigating factors; (3) present evidence that he was a good father; and (4) present adequate evidence of his work history.

{¶ 88} In his seventh ground for relief, Maxwell contends that trial counsel utilized Dr. McPherson as both investigator and mitigation specialist. According to Maxwell, this dual-purpose role deprived her from performing both roles sufficiently and, as result, counsel was unable to provide adequate mitigation.

{¶ 89} In support of this ground for relief, Maxwell attached to his petition affidavits from his brother, Andy Maxwell, and his sister, Teresa McNear; and he makes a passing reference to Dr. Layton's report. He maintains that Dr. McPherson's interview of the family was performed in a group setting, depriving family members an opportunity to speak comfortably; thus, he contends she was unable to build rapport with his family to help with mitigation. Additionally, he contends that her dual roles caused her to present inaccurate information to the jury during her testimony.

{¶ 90} The trial court found that Maxwell's submitted evidence was only marginally significant and that the Supreme Court addressed a majority of his concerns and arguments in his direct appeal. Specifically, the court noted that the Supreme Court found that Maxwell's defense team "thoroughly prepared for the penalty phase," and that "trial counsel employed a criminal investigator, a clinical psychologist who was a mitigation specialist, and another psychologist who was a mitigation expert." *Maxwell* at ¶ 191. Additionally, the Supreme Court rejected Maxwell's contention that inadequate mitigation evidence was presented. *Id.* at ¶ 187-198.

{¶ 91} On appeal, Maxwell maintains that the trial court abused its discretion in rejecting this ground for relief because its findings are not supported by the record, and the trial court "ignored" all the arguments raised in his petition. He contends that Dr. McPherson did not build a rapport with the family "in time to convince Maxwell to take a deal," and that the group meeting was inadequate to allow the family to "open up." According to Maxwell, the jury did not receive information on his background, character, history, or mental deficiencies.

{¶ 92} A majority of the trial court's findings are consistent with the Ohio Supreme Court's findings addressing the same arguments. Even granting that the affidavits and Dr. Layton's report are outside the record and were not considered on direct appeal, the information contained therein does not advance Maxwell's argument that Dr. McPherson's purported dual-role deprived him of adequate mitigation. Rather, the information Maxwell now advances in his petition

essentially relates to the tumultuous relationship between him and Nichole — a theory contrary to his actual innocence claim.

{¶ 93} Finally, Maxwell's argument that the jury did not receive information regarding his background, character, history, or mental deficiencies is completely unsupported by the record. In fact, the Supreme Court expressly found that

> Dr. McPherson provided expert testimony about Maxwell's background, his drug and alcohol problems, and his mental status. Testimony from family members and friends did reveal Maxwell's criminal past. But there were advantages as well as disadvantages in calling these witnesses. These witnesses helped to humanize him in front of the jury and showed that he had many positive characteristics as a good father and a hard worker.
>
> * * *
>
> [T]rial counsel presented the testimony of Maxwell's family members and coworkers that Maxwell was kind-hearted, a good worker, and a family man. Dr. McPherson reviewed Maxwell's educational records and discussed test results that showed his low intelligence. She also reviewed his prison records and explained how they showed that Maxwell would be a good prisoner if given a life sentence. Dr. McPherson also explained that Maxwell had suffered from alcohol dependency.

*Maxwell* at ¶ 194, 200.

{¶ 94} Without even considering the effect of res judicata on this claim, we find that Maxwell has failed to demonstrate that the trial court's decision rejecting his seventh ground for relief was an abuse of discretion.

{¶ 95} In his eighth ground for relief, Maxwell contends that he was denied effective assistance of counsel because counsel failed to investigate and present several necessary witnesses to support the R.C. 2929.04(B)(1) and (2) mitigating factors; respectively, whether the victim of the offense induced or facilitated the

murder, and whether it is unlikely that the offense would have been committed but for the fact that the offender was under duress, coercion, or strong provocation.

{¶ 96} In its sentencing opinion, the trial court specifically found:

> In my independent weighing process, I do not agree with the defense's contention that Nichole McCorkle's behavior on the night of the murder had anything to do with Mr. Maxwell's actions. I specifically find that she did not induce the offense. Further, I find that the aggravated murder conviction by Mr. Maxwell was not done while the defendant was acting under duress, coercion, or strong provocation. Therefore, I find that the mitigatory factors listed in R.C. 2929.04(B) (1) and (2) do not apply. Additionally, it should be noted that the defense did not request the court to instruct the jury to consider these two mitigatory factors.

*State v. Maxwell*, Cuyahoga C.P. No. 05-CR-475400, Opinion of the Court, Findings of Fact and Conclusions of Law Regarding Imposition of Death Penalty, dated March 23, 2007.

{¶ 97} Notwithstanding that this issue could have been raised on direct appeal, we note that Maxwell's defense strategy at trial consisted of him maintaining his innocence. Accordingly, it can only be viewed as strategy that these two factors were not presented. It is well established that the presentation of mitigating evidence is a matter of trial strategy and "'[t]he decision to forgo the presentation of additional mitigating evidence does not itself constitute ineffective assistance of counsel.'" *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 240, quoting *State v. Keith*, 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997). The introduction of evidence mitigating and explaining that it was Nichole who induced or facilitated the murder, or that Maxwell was acting under duress or strong

provocation when he shot her, would have been inconsistent with the defense's trial strategy and theory of the case. Because trial strategy cannot form the basis of an ineffective assistance claim, the trial court did not abuse its discretion in rejecting this claim for relief without an evidentiary hearing. *See, e.g., State v. Ellison*, 2d Dist. Montgomery No. 25638, 2013-Ohio-5455, ¶ 30.

{¶ 98} In his tenth ground for relief, Maxwell contends that his defense team failed to present evidence that he was a good father, and that had this evidence been presented, the trial court's findings and conclusions would have offered the jury mitigating evidence that would have humanized Maxwell and demonstrated what kind of provider he was to his family.

{¶ 99} Maxwell supported this ground for relief with the affidavits of his brother, Andy Maxwell, and his mother, Earnestine Brewer. Additionally, he cites to the trial court's death penalty sentencing opinion's findings of fact and conclusions of law that "the evidence did not demonstrate that he was a regular provider for his family, including his daughter * * * and [Nichole]." *State v. Maxwell*, Cuyahoga C.P. No. 05-CR-475400, Opinion of the Court, Findings of Fact and Conclusions of Law Regarding Imposition of Death Penalty, dated March 23, 2007.

{¶ 100} The trial court acknowledged this ground for relief but did not make any specific finding. Rather, it quoted from the Ohio Supreme Court's decision that the "defense thoroughly prepared for the penalty phase." However, Maxwell does not contend that this omission per se constitutes error. In fact, he maintains that

"the trial court addressed this claim, but it is difficult to discern what the findings are." Despite this perceived deficiency, Maxwell presents his argument with supporting evidence that challenges the trial court's finding in the sentencing entry. Accordingly, the lack of specific finding addressing Maxwell's tenth ground for relief has not hindered Maxwell from making a reasoned appeal and affording him meaningful appellate review. *State v. Mapson*, 1 Ohio St.3d 217, 219, 438 N.E.2d 910 (1982). Moreover, considering the entire record, this court is not precluded from understanding the basis for the trial court's decision on this ground for relief. *State v. Clemmons*, 58 Ohio App.3d 45, 46, 568 N.E.2d 795 (2d Dist.1989).

{¶ 101} As previously discussed in addressing Maxwell's seventh ground for relief, mitigation testimony was presented demonstrating that he was viewed as a good person who loved and was loved by his family. Moreover, the affidavits submitted by Maxwell in support of this ground for relief are cumulative to the evidence presented during mitigation. Including other family and friends, both his brother and his mother testified during mitigation and presented testimony that Maxwell was a kindhearted man and according to Andy, "had a great relationship with C.M." Additionally, we note that Maxwell's older sister, Sharon Graves, testified during mitigation that her brother had a loving relationship with his daughter, and that he was supportive of her own children — a sentiment that his younger sister, Teresa McNear, shared. Additionally, Teresa testified that Maxwell loved his daughter and had good interactions with her.

{¶ 102} Based on the entire record, we find that the trial court did not abuse its discretion in not affording Maxwell postconviction relief under his tenth ground for relief because the evidence outside the record was cumulative to what was presented during the mitigation phase at trial.

{¶ 103} In his eleventh ground for relief, Maxwell contends that his defense team did not provide him with effective assistance during the mitigation phase of trial because inadequate evidence of his work history was presented.

{¶ 104} The trial court determined that the record demonstrates that counsel presented substantial evidence of Maxwell's employment, reputation as a hard worker, and generous nature. We agree.

{¶ 105} On appeal, Maxwell admits that trial counsel presented testimony that he was a hard worker, but argues that it was insufficient, and that counsel should have instructed witnesses to elaborate. He contends that the trial court abused its discretion in failing to "credit any of the information in the affidavits" attached to his petition.

{¶ 106} The affidavits submitted by Maxwell in support of this ground for relief are cumulative to the evidence presented during mitigation. *See, e.g., Maxwell* at ¶ 200. The record is replete with evidence of Maxwell's employment history and reputation as a generous, hardworking individual. Accordingly, we find that the trial court did not abuse its discretion in rejecting Maxwell's eleventh ground for relief without an evidentiary hearing.

{¶ 107} Accordingly, we find that the trial court did not abuse its discretion in denying Maxwell's grounds for relief challenging that he was deprived of his constitutional right to effective assistance of counsel during the mitigation phase of his capital trial.

## D. Constitutionality of Ohio's Postconviction Procedures

{¶ 108} In his twelfth ground for relief, Maxwell contends that Ohio's postconviction procedures do not provide an adequate corrective process, in violation of the constitution. The trial court found, citing to this court's precedent, that Ohio's postconviction procedures repeatedly have been upheld as constitutional. *See State v. Hutton*, 8th Dist. Cuyahoga No. 76348, 2004-Ohio-3731, ¶ 26; *see also State v. Conway*, 10th Dist. Franklin No. 05AP-550, 2006-Ohio-6219, ¶ 27. We agree with the trial court and find no abuse of discretion in its decision dismissing this ground for relief without an evidentiary hearing.

## E. Conclusion

{¶ 109} Based on the foregoing, Maxwell's fourth assignment of error is overruled. His postconviction petition, the supporting affidavits, the documentary evidence, and the entire court record do not demonstrate that Maxwell has set forth sufficient operative facts to establish substantive grounds for relief, and therefore, the trial court did not abuse its discretion in dismissing his petition without further discovery or an evidentiary hearing.

{¶ 110} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR